**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4881

MICHAEL J. BOSTIC,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Charles H. Haden II, Chief District Judge.
(CR-97-72)

Argued: September 25, 1998

Decided: February 17, 1999

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge,
and BULLOCK, Chief United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Bullock wrote the opin-
ion, in which Chief Judge Wilkinson and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Hunt Lee Charach, Federal Public Defender, Charleston,
West Virginia, for Appellant. Stephanie Dawn Thacker, Assistant
United States Attorney, Charleston, West Virginia, for Appellee. **ON
BRIEF:** Mary Lou Newberger, Assistant Federal Public Defender,
Charleston, West Virginia, for Appellant. Rebecca A. Betts, United
States Attorney, Charleston, West Virginia, for Appellee.

**OPINION**

BULLOCK, Chief District Judge:

Michael Bostic appeals from his conviction and sentence. With respect to his conviction, Bostic challenges the district court's denial of his motion to dismiss an indictment charging him with violations of 18 U.S.C. §§ 922(g)(8) and 924(a)(2), relating to the unlawful possession of a firearm by an individual subject to a domestic violence protective order. Bostic contends the domestic violence protective order in his case did not meet the requirements of Section 922(g)(8)(C). Bostic also raises several constitutional challenges against Section 922(g)(8). With respect to his sentence, Bostic objects to a four-level enhancement he received for use of a firearm in connection with another felony offense pursuant to U.S. Sentencing Guidelines Manual (USSG) § 2K2.1(b)(5) (1995). Finding no merit in Bostic's claims, we affirm.

I.

Bostic and his wife, Kelly, were married in April 1991. They lived together until November 1996, when they separated. They have one child, Ryan Bostic. At the time they separated, Kelly maintained primary custody of Ryan.

On January 23, 1997, Kelly filed a Family Violence Petition in the Magistrate Court of Greenbrier, West Virginia, seeking an order to protect her and/or Ryan from family violence or abuse pursuant to W. Va. Code §§ 48-2A-4 and 5. The petition alleged that on January 22, 1997, during a visitation period when Bostic had Ryan at his residence, Bostic used the child to lure Kelly to the residence by claiming that Ryan had a fever and needed Motrin. When Kelly arrived, however, she discovered that Ryan did not have a fever. Instead, Bostic initiated an argument with her which culminated in an attempted rape.

The Greenbrier County Magistrate Judge issued a temporary protective order pursuant to W. Va. Code §§ 48-2A-5(a) and (b) and scheduled a final protective order hearing for January 28, 1997. Notice of both the temporary protective order and the final protective

2

order hearing was served on Bostic. On January 28, 1997, following a full hearing on the matter at which Bostic was present with counsel and had the opportunity to testify, the magistrate judge issued a final protective order ("the Order") against Bostic. In issuing the Order, the magistrate judge found that Kelly had proven her allegations of family violence and abuse and ordered Bostic to refrain from abusing or harassing Kelly. The Order further awarded temporary custody of Ryan to Kelly, but did allow for Bostic to have visitation from January 29 through February 2, 1997. The Order did not provide that Bostic was to surrender possession of any firearms he may have otherwise legally possessed and it did not contain any notice that the mere possession of a firearm while subject to the Order would constitute a violation of any law, state or federal. The Order did notify that violation of the Order itself "is a civil contempt of court, may be a crime, and may result in an order to post bond, a fine and/or imprisonment." J.A. at 57. Nevertheless, at no time did Bostic receive notice from any other source that the issuance of the Order extinguished his right to possess firearms he owned and possessed in his home.

In accordance with the terms of the Order, Bostic picked up Ryan on the evening of January 29, 1997. On the morning of February 1, Bostic again lured Kelly to his house, claiming that Ryan was sick and needed to go to the hospital. When Kelly entered the residence, Bostic locked the doors, shoved the couch against the back door, and wielded a .20 gauge shotgun. Bostic engaged in an extended verbal assault, threatening to kill Kelly, Ryan, and himself. Fortunately, no physical violence occurred and Kelly ultimately succeeded in removing herself from the residence. Bostic was arrested later that day and was charged with wanton endangerment and brandishing in Greenbrier County Magistrate Court in violation of W. Va. Code §§ 61-7-11 and 61-7-12. Incident to the arrest, a loaded .22 caliber handgun was retrieved from a bedroom in Bostic's residence. Although other firearms were observed by officers on February 1, they were not seized because they were located in a locked gun cabinet.

Thereafter, officers executed a search warrant of Bostic's residence on February 15, 1997. At this time, three additional firearms and numerous rounds of ammunition were retrieved from Bostic's residence. One of the three firearms seized on February 15 was the .20

3

gauge shotgun believed to have been used during the February 1 incident.

On June 5, 1997, a federal grand jury sitting in Charleston, West Virginia, returned an indictment against Bostic charging him with five counts of violating 18 U.S.C. § 922(g)(8): Count I (possession of the .20 gauge shotgun on February 1); Count II (possession of .12 gauge shotgun on February 15); Count III (possession of a .270 caliber rifle on February 15); Count IV (possession of the .20 gauge shotgun on February 15); Count V (possession of the .22 caliber revolver on February 1). On June 18, 1997, Bostic filed a motion to dismiss the indictment. In support of the motion to dismiss, Bostic argued that the indictment was multiplicitous, that the facts of the case did not conform to the elements required for a Section 922(g)(8) violation, and that Section 922(g)(8) was unconstitutional. On August 4, 1997, the district court entered an opinion which held that the indictment was multiplicitous in some respects, but rejected all of Bostic's remaining challenges to the statute and the indictment. Bostic subsequently pled guilty to Count V (possession of the .22 caliber revolver on February 1) on August 11, 1997. In his plea agreement, Bostic reserved the right to appeal the district court's ruling on his motion to dismiss the indictment.

A sentencing hearing was held on October 27, 1997, at which the district court heard argument on Bostic's objections to the presentence report. With respect to the ruling he challenges on appeal, Bostic objected to the recommendation in the presentence report that his offense level be increased by four levels for the use of a firearm in connection with another felony offense pursuant to USSG § 2K2.1(b)(5). The district court overruled Bostic's objection and applied the four-level enhancement. Ultimately, Bostic was sentenced to imprisonment for a period of thirty-three months and supervised release for a period of three years. This appeal followed.

II.

Because they present questions of law, we review de novo the district court's rulings as to whether the Order meets the requirements of Section 922(g)(8) and as to all issues related to the constitutionality

4

of Section 922(g)(8). See United States v. Ham, 74 F.3d 537, 540 (4th Cir.), cert. denied, 517 U.S. 1239 (1996).

A.

Before addressing Bostic's constitutional challenges to Section 922(g)(8), we first address Bostic's argument that the Order fails to meet the requirements of Section 922(g)(8). To convict Bostic for violating Section 922(g)(8), the United States is required to show that Bostic was subject to a court order which satisfied three prerequisites. In particular, the United States has to show the issuance of a court order that:

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

> (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[.]

18 U.S.C. § 922(g)(8). While Bostic concedes the Order meets the requirements of subsections (A) and (B), he maintains that the Order did not satisfy either subsection (C)(i) or (C)(ii). We disagree. The Order's directive that Bostic "shall refrain from abusing [Kelly]," J.A. at 55, unambiguously satisfies subsection (C)(ii)'s requirement that

5

the court order prohibit the use, attempted use, or threatened use of physical force.**1**

B.

We now turn to Bostic's constitutional challenges to Section 922(g)(8). Bostic's primary contention on appeal is that Section 922(g)(8) is unconstitutional because it violates the notice and fair warning principles embodied in the Fifth Amendment. The district court rejected this claim based on the "fundamental principle" that ignorance of the law is no excuse. See Cheek v. United States, 498 U.S. 192 (1991). In addition, the district court emphasized that every court of appeals, including this one, that has considered this issue has rejected similar challenges to the felon-in-possession statute, 18 U.S.C. § 922(g)(1). See United States v. Langley, 62 F.3d 602 (4th Cir. 1995) (en banc) (holding that proof that defendant knew he was violating Section 922(g)(1) is not required for prosecution nor is ignorance of the law a defense to such prosecution), cert. denied, 516 U.S. 1083 (1996).

We agree with the district court that this court's decision in Langley controls in this case and are not persuaded by Bostic's attempts to distinguish Langley. Bostic first notes the holding in Langley was based in part on the fact that "the reasonable expectations of felons are wholly distinct from the reasonable expectations of ordinary citizens." 62 F.3d at 607. Bostic argues that, unlike the felon in Langley, he was subject to a civil order and reasonably retained the expectations of an ordinary citizen. We disagree, however, with Bostic's premise that he remained an "ordinary citizen" after the Order was entered against him. By engaging in abusive conduct toward Kelly and Ryan which led to the entry of the Order, Bostic removed himself from the class of ordinary citizens we discussed in Langley. Like a felon, a person in Bostic's position cannot reasonably expect to be free from regulation when possessing a firearm.

_____

**1** Because we find that the Order contains the finding required under subsection (C)(ii), we need not address the issue of whether the Order satisfied subsection (C)(i) also.

6

Second, Bostic contends that <u>Langley</u> relied upon the fact that the precursor statutes to Section 922(g)(1) had not required notice to the felon of prohibitions on firearm possession resulting from felony status. However, the discussion in <u>Langley</u> referred to by Bostic related to the defendant's argument that the government should have to prove that he knew he was a felon. <u>Langley</u>, 62 F.3d at 605-05. It did not involve a discussion of the argument that Bostic advances here, <u>i.e.</u>, that he is entitled to notice that his conduct was illegal. Moreover, the relevant <u>mens rea</u> language for Section 922(g)(8) is located in Section 924(a)(2), which provides that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2). This court has held that "[b]ecause `willful' generally connotes a conscious performance of bad acts with an appreciation of their illegality, <u>see Ratzlaf v. United States</u>, 510 U.S. 135 (1994), we can conclude that Congress intended to provide a different and lesser standard when it used the word `knowingly.'" <u>United States v. Wilson</u>, 133 F.3d 251, 262 (4th Cir. 1997) (holding that"knowingly" as used in a statute making it a crime to "knowingly violate" enumerated provisions of the Clean Water Act obligated the government to prove the defendant's knowledge of the facts meeting each element of the offense, but not of his conduct's illegality); <u>see also Bryan v. United States</u>, ___ U.S. ___, 118 S. Ct. 1939 (1998) (holding that term "willfully" in 18 U.S.C. § 924(a)(1)(D) requires proof that the defendant knew his conduct was unlawful).**2** Thus, statutory interpretation of the term "knowingly" as used in analogous contexts does not include a requirement that the defendant be aware of the illegality of his conduct.

_____

**2** At oral argument, counsel for Bostic argued that the Supreme Court's recent holding in <u>Bryan</u> implicitly overruled or at least limited this court's holding in <u>Langley</u>. <u>Bryan</u>, however, involved consideration of Section 924(a)(1)(D), in which the relevant <u>mens rea</u> term is "willfully." In contrast, <u>Langley</u> involved consideration of Section 924(a)(2), in which the relevant <u>mens rea</u> term is "knowingly." Thus, <u>Bryan</u> does not limit the holding in <u>Langley</u>. Moreover, by emphasizing that the term "knowingly" refers to factual knowledge and"does not necessarily have any reference to a culpable state of mind or to knowledge of the law," the Supreme Court's holding in <u>Bryan</u> strongly supports our holding in this case. 118 S. Ct. at 1945.

Bostic's reliance on the Supreme Court's decision in <u>Staples v. United States</u>, 511 U.S. 600 (1994), is also misplaced. The Supreme Court's holding in <u>Staples</u>, as well in the related case of <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64 (1994), was directed at awareness of the elements that define circumstances upon which criminality turns, not at the illegality of the conduct. For example, <u>Staples</u> held that the government had to prove that the defendant knew the firearm was capable of automatic firing, not that it was unlawful to possess such a firearm with such capability. <u>X-Citement Video</u> similarly held that the government had to prove that the defendant knew that the individual in the sexually explicit material being shipped was a minor, not that it was illegal to ship such material. Here, it is undisputed that Bostic was aware of all the circumstances surrounding his Section 922(g)(8) conviction. Bostic was aware that he possessed a firearm. Bostic was also aware that he was subject to a domestic violence restraining order which included a finding that he represented a physical threat to Kelly and/or Ryan and prohibited him from abusing Kelly and/or Ryan. Accordingly, we conclude that due process does not entitle Bostic to notice that his conduct was illegal.

Next, Bostic argues that Section 922(g)(8) is unconstitutional because Congress exceeded its authority under the Commerce Clause in enacting the statute. Bostic relies on <u>United States v. Lopez</u>, 514 U.S. 549 (1995), in which the Supreme Court held that Congress exceeded its authority under the Commerce Clause by enacting the Gun Free School Zones Act of 1990, 18 U.S.C. § 922(q) (West Supp. 1996). The Supreme Court in <u>Lopez</u> relied on the fact that "[Section] 922(q) contains no jurisdictional element which would ensure, through a case-by-case inquiry, that the firearm possession statute in question affects interstate commerce." <u>Lopez</u>, 514 U.S. 561.

Unlike the statute at issue in <u>Lopez</u>, Section 922(g) expressly requires the government to prove that the firearm was "ship[ped] or transport[ed] in interstate or foreign commerce"; was "possess[ed] in or affect[ed] commerce"; or is received after having been "shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). This jurisdictional element applies to all nine subsections included in Section 922(g). In <u>United States v. Wells</u>, 98 F.3d 808 (4th Cir. 1996), this court found that the same jurisdictional element satisfied the "minimal nexus required for the Commerce Clause" and held that

8

Congress did not exceed its authority under the Commerce Clause in enacting Section 922(g)(1), the felon-in-possession statute. 98 F.3d at 811 (citing the ten courts of appeal that have considered and upheld the constitutionality of Section 922(g)(1) since Lopez). As this court held in Wells, because Section 922(g)(8) contains an express jurisdictional element, it does not exceed Congress' authority under the Commerce Clause.

Finally, Bostic argues that, by regulating domestic violence, Section 922(g)(8) interferes with West Virginia's domestic relations laws in violation of the Tenth Amendment. Again, we disagree. The Tenth Amendment provides that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." U.S. Const. amend. X. "We ask two questions to determine whether a statute violates [the Tenth Amendment.] First, whether the regulation it embodies is within Congress' power as being within those enumerated in the Constitution. Second, whether, even if so, the means of regulation employed yet impermissibly infringe upon state sovereignty." United States v. Johnson, 114 F.3d 476, 480 (4th Cir. 1997) (citing New York v. United States, 505 U.S. 144 (1992)). As we held in our discussion of Lopez, supra, Congress acted within its authority under the Commerce Clause in enacting Section 922(g)(8). Therefore, we need address only whether the means of regulation employed impermissibly infringe on state sovereignty.

Bostic relies primarily upon the Supreme Court's recent decision in Printz v. United States, 521 U.S. 98 (1997), to support his argument that Section 922(g)(8) violates the Tenth Amendment. Printz is inapposite to the situation presented in this case. In Printz, the Supreme Court held that the Brady Act's requirement that state officials perform background checks placed an unconstitutional obligation on sovereign state officials. Section 922(g)(8), in contrast, poses no similar affirmative obligation. Instead, Section 922(g)(8) is a constitutional exercise of Congress's commerce power supplementing complementary state legislation. See United States v. Johnson, 114 F.3d 476, 480 (4th Cir. 1997) (although pre-dating Printz, holding that Child Support Recovery Act was constitutional and noting that "federal laws criminalizing conduct within traditional areas of state law, whether the states criminalize the same conduct or decline to

9

criminalize it, are, of course, commonplace under the dual-sovereign concept and involve no infringement per se of states' sovereignty in the administration of their criminal laws"). Accordingly, Section 922(g)(8) does not violate the Tenth Amendment.

III.

Bostic also contends the district court erred in enhancing the sentence four levels pursuant to USSG § 2K2.1(b)(5) for use of a firearm in connection with another felony offense. Mixed questions of law and fact regarding application of the sentencing guidelines are subject to a due-deference standard of review. United States v. Nale, 101 F.3d 1000 (4th Cir. 1996).

Section 2K2.1(b)(5) provides in relevant part:"If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by four levels." USSG § 2K2.1(b)(5).

Bostic's basic contention is that this enhancement was inappropriate because the firearm comprising his state charge for wanton endangerment, i.e., the .20 gauge shotgun, is not the same firearm described in his federal count of conviction, i.e., the possession of the .22 caliber revolver. This argument is misplaced because it fails to recognize that Bostic's relevant conduct can be considered in determining whether an enhancement under Section 2K2.1(b)(5) is appropriate.

Enhancements under Section 2K2.1(b) consistently reference the term "offense," not merely "offense of conviction." Under USSG § 1B1.1, the term "offense" is defined to mean "the offense of conviction and all relevant conduct under § 1B1.3 . . . unless a different meaning is specified or is otherwise clear from the context." USSG § 1B1.1, comment n.1(l). As the United States notes, Bostic did not object to all of the firearms seized at his residence being considered as relevant conduct, nor did Bostic object to the consideration of all such firearms in applying an enhancement for an offense that involved three or more firearms pursuant to USSG§ 2K2.1(b)(1)(A). J.A. at 117-19, 148, 160-61. Given that possession of the shotgun is

10

part of Bostic's offense, an enhancement under Section 2K2.1(b)(5) was appropriate as Bostic used or possessed that shotgun in connection with the felony offense of wanton endangerment. See United States v. Kuban, 94 F.3d 971 (5th Cir. 1996) (four-level enhancement applied where defendant held firearm to the victim's head), cert. denied, 519 U.S. 1070 (1997).

IV.

For the foregoing reasons, we affirm the district court's rulings denying Bostic's motion to dismiss and applying a four-level enhancement pursuant to USSG § 2K2.1(b)(5).

AFFIRMED

11