**UNITED STATES of America**

v.

**Brian Scott SPRUILL.**

**No. MO:98–CR–094–F.**

United States District Court,
W.D. Texas,
Midland–Odessa Division.

Aug. 13, 1999.

John S. Klassen, Assistant United States Attorney, Midland, TX, for plaintiff.

Vern F. Martin, Ed Martin, Midland, TX, for defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

FURGESON, District Judge.

Before the Court are the Defendant's Motion to Dismiss Indictment, received October 14, 1998; the Supplemental Memorandum in Support of Motion to Dismiss, filed March 12, 1999; the Government's Response, filed March 16, 1999; the Defendant's (Second) Motion to Dismiss, filed April 23, 1999; and, the Government's Response, filed May 6, 1999. The Court held a hearing on this matter on May 7, 1999. The Court denied the motion without prej-

udice, pending the receipt of testimony and a renewed motion at trial. The Defendant has entered a conditional plea of guilty pursuant to Federal Rule of Criminal Procedure 11(a)(2). The Court held a hearing on June 10, 1999, in order to preserve a record for the Defendant's appeal. After due consideration, the Court DENIES the Defendant's Motion to Dismiss the Indictment with prejudice.

## I.  BACKGROUND

Defendant's wife filed for a divorce and a restraining order. The Assistant District Attorney ("ADA") contacted the Defendant to notify him of the application for a restraining order and a hearing to be held on the same. The Defendant informed the ADA that he would agree to the entry of the order. Based on that representation, the ADA printed a standard restraining order and invited the Defendant to come sign that order. The Defendant came in to the ADA's office for that purpose. The Defendant informed the ADA that he could not read. The ADA explained the restraining order to the Defendant. In particular, the ADA informed the Defendant that he could not go within a set distance of his spouse, children or mother-in-law's home. The ADA did not inform the Defendant that, upon entry of the order, the Defendant would not be able to possess a firearm. The ADA was not aware of this federal law and has never heard a party admonished to that effect in over one hundred protective orders he has handled.

The ADA also explained to the Defendant that he could choose to hire counsel, object to the entry of the order, and appear before a state court judge. The Defendant stated that he would agree to the order, signed the order, and left. Although the language in this protective order states that the Defendant appeared in person, the Defendant never appeared before a judge, nor was a hearing (at least as this Court would define one) apparently ever held. Despite this, the order pur-

ported to find that family violence had occurred. This language, however, was contained in the proposed order which the Defendant signed without protest and the Defendant did have the *opportunity* to participate in a hearing, thus satisfying any procedural due process concerns. *See United States v. Falzone,* 1998 WL 351471 at * 1–2 (D.Conn.1998).

There is no evidence, nor does anyone allege, that the Defendant ever violated the restraining order. The Defendant admits to the stipulation of facts read into the record at the time of his conditional plea. In brief, the Defendant admits that he was arrested while in possession of a firearm which was made in Spain. The circumstances surrounding the arrest are not in issue and do not impact upon the Defendant's guilt or innocence for the crime with which he is charged. However, the Court briefly recites them as background material. They are not findings of fact.

The Government contends that Defendant had informed a friend that he intended to shoot his estranged wife. This friend knew that the Defendant did indeed possess a firearm and apparently believed this talk was more than an idle threat. The friend contacted the authorities. Federal agents asked the friend to telephone the Defendant and set up a transaction involving the exchange of a gun. Federal agents recorded this phone call and were present when the Defendant traded one weapon for another with the friend. Agents arrested the Defendant immediately after the trade and while the Defendant was in possession of a firearm that had traveled in interstate commerce.

Defendant does not contest the fact that he was (1) subject to a restraining order and (2) in possession of a firearm that traveled in interstate commerce. Instead, Defendant challenges the statute as unconstitutional both facially and as applied. In particular, Defendant alleges the statute violates the Second and Fifth Amendments.

## II. DISCUSSION

Section 922(g)(8) is a rather recent and rarely enforced statute. There have been only a handful of challenges based on several constitutional grounds and all but one of these have failed. *E.g., United States v. Myers,* 1999 WL 475571 (8th Cir. June 29, 1999) (slip op.) (rejecting 10th Amendment and Commerce Clause arguments); *United States v. Meade,* 175 F.3d 215 (1st Cir.1999) (rejecting 5th and 10th Amendment claims); *United States v. Bostic,* 168 F.3d 718 (4th Cir.1999) (rejecting 5th and 10th Amendment and Commerce Clause claims); *United States v. Cunningham,* 161 F.3d 1343 (11th Cir.1998) (rejecting Commerce Clause claims); *United States v. Wilson,* 159 F.3d 280 (7th Cir.1998) *cert. denied,* —— U.S. ——, 119 S.Ct. 2371, 144 L.Ed.2d 774 (rejecting 5th and 10th Amendment and Commerce Clause claims); *United States v. Pierson,* 139 F.3d 501 (5th Cir.1998) (rejecting Commerce Clause claims); *United States v. Henson,* 1999 WL 412803 (S.D.W.Va. June 14, 1999) (rejecting holding in *United States v. Emerson, infra* (2nd and 5th Amendment claims)); *United States v. Emerson,* 46 F.Supp.2d 598 (N.D.Tex. 1999) (rejecting Commerce Clause and 10th Amendment claims, but accepting 2nd and 5th Amendment claims); *United States v. Boyd,* 52 F.Supp.2d 1233 (D.Kan. 1999) (rejecting Commerce Clause, Ex Post Facto, 2nd Amendment and 5th Amendment Equal protection claims).

The Defendant challenges his conviction on the basis of the Second and Fifth Amendments, and relies heavily on the decision in *Emerson, supra.*

### A. The Fifth Amendment Challenge Fails

▮ Three Circuit Courts of Appeal have rejected Due Process attacks on Section 922(g)(8). *See Meade,* 175 F.3d 215 (1st Cir.); *Bostic,* 168 F.3d 718 (4th Cir.); *Wilson,* 159 F.3d 280 (7th Cir.). Two of these cases are distinguishable in that the defendants were arrested for violating the statute after or while also violating the restraining order. *See Meade,* 175 F.3d at 217 (defendant arrested in possession of firearm after pounding on wife's door in the middle of the night); *Bostic,* 168 F.3d at 720 (defendant arrested after holding ex-wife at gunpoint). The defendant in *Wilson,* however, like the defendant in this case, had not violated the restraining order in any manner. *See Wilson,* 159 F.3d 280. The Seventh Circuit, over the vigorous dissent of Chief Judge Posner, expressly rejected the defendant's due process argument related to notice of the statute. *See id.* at 288–89. The Supreme Court has refused *certiorari* in that case and, while such a refusal is not the same as granting *certiorari* and affirming the case, it at least leaves the decision standing as binding law in the Seventh Circuit and as persuasive reasoning elsewhere. This Court adopts *Wilson's* reasoning and rejects the Defendant's Due Process challenge.

### B. The Second Amendment Challenge Fails

No Circuit Court of Appeals has yet dealt with a Second Amendment challenge to Section 922(g)(8). While the appellate courts are still silent on the specific topic, there is considerable debate, as a general matter, about whether the Second Amendment guarantees an individual right to bear arms or a collective right on the part of the State to arm a militia.[1] *E.g.,* Eugene Volokh. *The Commonplace Second Amendment,* 73 N.Y.U.L.Rev. 793 (1998) (examining the practice of including justification clauses in state constitutions and implying that this justification (militia) clause does restrict the operative clause); David C. Williams, *The Unitary Second Amendment,* 73 N.Y.U.L.Rev. 822 (arguing that the justification (militia) clause

---

1. The Second Amendment reads:
   A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed.

restricts the operative clause to a collective right). For some scholars, the debate is not serious enough; Professor Sanford has lamented that scholars refuse to entertain any argument that the Second Amendment might confer an individual right. *See* Sanford Levison, *The Embarrassing Second Amendment.* 99 Yale L.J. 637 (1989); Sanford Levison, *Is the Second Amendment Finally Becoming Recognized as Part of the Constitution? Voices from the Courts,* 1998 B.Y.U.L.Rev. 127 (finding this "wooden reliance on *Miller* [*see infra*], coupled with a refusal to confront seriously the arguments made by such thoughtful opponents of federal regulation of guns as Senator Orrin Hatch, is fundamentally disrespectful.") *Id.* at 129.

Not only is the legal academy showing an increasing interest in the Second Amendment; the historical academy is as well. *See, Arms and The Man,* The Economist, July 3, 1999, at 17 (citing the research of Michael Bellesiles in the following works: *The Origins of the Gun Culture in the United States, 1760 to 1865,* 83 J.Am.Hist. 425 (1996); *Gun Laws in Early America: The Regulation of Firearms Ownership, 1607–1694,* 16 Law and Hist.Rev. 567 (1998); Michael Bellesiles, *Lethal Imagination* (1999); and a book to be published by Knopf in 2000). That the Second Amendment is generating such important research and debate among legal scholars and historians is a good thing. The eventual results should prove immensely helpful to the courts as we seek to come to grips with the new controversies now being raised for consideration.

Although the particular issue before this Court has not been examined by any of the federal appellate courts and although the academy is still in the midst of its work, there are some reference points to note. Five Circuit Courts of Appeal have determined that the Second Amendment protects only a collective right. *See, e.g., Gillespie v. City of Indianapolis,* 185 F.3d 693, 709 (7th Cir.1999) (finding 922(g)(9)

does not violate 2nd Amendment); *Hickman v. Block,* 81 F.3d 98, 100–01 (9th Cir.1996) (finding plaintiff lacked standing under 2nd Amendment to due for denial of permit to carry weapon); *Love v. Pepersack,* 47 F.3d 120, 124 (4th Cir.1995) (denying section 1983 claim based on 2nd Amendment because plaintiff failed to demonstrate that her application to purchase a firearm was related to the preservation of a militia); *United States v. Warin,* 530 F.2d 103, 106–7 (6th Cir.1976) (admitting *Miller, infra,* did not reach the issue but finding it "inconceivable" that 2nd Amendment conferred individual right); *Cases v. United States,* 131 F.2d 916, 920–23 (1st Cir.1942) (finding *Miller, infra,* could not have meant that an individual could possess a firearm if it had a military purpose and upholding felon in possession conviction).

There is also one Supreme Court pronouncement on the issue in this century, in a case which arose in 1939. *See United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); *but see, Lewis v. United States,* 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (opining parenthetically in dicta that Miller stands for the proposition that the 2nd Amendment protects the possession of firearms only to the extent that the possession itself relates to the preservation of the militia); *Konigsberg v. State Bar of California,* 366 U.S. 36, 51 n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (noting that the First Amendment's unqualified terms can nevertheless be qualified and citing *Miller* in support). Miller was found in possession of a sawed off shotgun. *See Miller,* 307 U.S. at 175, 59 S.Ct. 816. The district court accepted Miller's contention that the 1934 Firearms Act violated the Second Amendment. *See id.* at 177, 59 S.Ct. 816. The Supreme Court unanimously reversed. *See id.* at 183, 59 S.Ct. 816. While the Court discussed the militia clause at some length, it never specifically held that the Second Amendment permits the federal govern-

ment to ban individual possession of all weapons. *See generally id.* at 177–83, 59 S.Ct. 816. Rather, its decision can be read simply to allow the federal government to require registration of all weapons which lack a military purpose (as did the sawed off shotgun Miller possessed). *See, e.g., Emerson*, 46 F.Supp.2d at 608–9.

Someday there will undoubtedly be a clear cut opinion from the Supreme Court on the Second Amendment. Without more at this time, however, the Court chooses to follow the majority path and here holds that the Second Amendment does not prohibit the federal government from imposing some restrictions on private gun ownership. The statute in question in this case is aimed at preventing the family violence that seems epidemic in this country. Although critics may argue that there are probably more effective ways to deal with family violence than the statute at hand, it is not for this Court to reverse the will of Congress simply because a better statute could possibly be crafted. Our system does not work like that. The elected representatives of the people are to be given wide latitude in addressing societal needs. The Court therefore rejects the Defendant's challenge on the basis of the Second Amendment.

## III. CONCLUSION

The Court DENIES the Defendant's Motion to Dismiss Indictment WITH PREJUDICE.