**UNITED STATES of America,**
**Plaintiff,**

v.

**Lyndon B. LARSON, Defendant.**

**Criminal Action No. 3:11–cr–00021.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Feb. 16, 2012.

---

Allessandra E. Stewart, Ronald Mitchell Huber, United States Attorneys Office, Charlottesville, VA, for Plaintiff.

Andrea S. Lantz Harris, Federal Public Defenders Office, Charlottesville, VA, for Defendant.

## *MEMORANDUM OPINION*

GLEN E. CONRAD, Chief Judge.

This criminal prosecution involves a man who, on February 4, 2011, allegedly brandished a firearm in Charlottesville, Virginia. The government prosecutes the defendant, Lyndon B. Larson ("Larson" or "defendant"), under 18 U.S.C. § 922(g)(8), charging that Larson knowingly possessed the firearm, a Smith and Wesson .38 Special revolver, while being subject to a domestic violence-related court order. 18 U.S.C. § 922(g)(8) (2006). On October 13, 2011, the defendant moved the court under Federal Rule of Criminal Procedure 12(b)(3)(B) to dismiss the indictment, contending that the underlying state court judgment which serves as the basis for his prosecution fails to qualify as the court order contemplated by the statute, and that his prosecution under the statute violates his Second Amendment right to bear arms and his Fifth Amendment procedural due process rights. For the reasons that follow, the court will deny the defendant's motion.

## I. *Factual and Procedural Background*

On September 22, 2010, the defendant was arrested and charged with assault and battery against a family or household member, in violation of Virginia Code § 18.2–57.2. (Docket No. 16 at 1.) At the time of his arrest, an ex parte Emergency Protective Order ("EPO") was issued, without a contested hearing, on the question of the defendant's dangerousness, pursuant to Virginia Code § 16.1–253.4. (*Id.*) The EPO expired on September 27, 2010, and was not renewed. (*Id.*) On November 5, 2010, the defendant was convicted in the Charlottesville Juvenile and Domestic Relations Court of assault and battery of a family or household member. (*Id.*) The sentencing judge imposed a 30–day prison sentence, all of which was suspended for a period of two years. (*Id.*) As a condition of the suspended sentence, the judge imposed a mandate of "no violent, threatening or abusive contact w/victim," noting this condition in writing on the judgment sheet. (Docket No. 16–1 at 2.)

On February 4, 2011, Larson was arrested in Charlottesville and charged with the misdemeanor offenses of brandishing a firearm, in violation of Virginia Code § 18.2–282, and possessing a concealed weapon, in violation of Virginia Code § 18.2–308. (Docket No. 16 at 2.) However, the defendant obtained a dismissal of these state charges on September 2, 2011, after a federal prosecution had been initiated against him for the same February 4 firearm-related incident. (*Id.*) The July 27, 2011 federal indictment charged that Larson knowingly possessed a firearm while subject to a domestic violence court order, in violation of 18 U.S.C. § 922(g)(8). (Docket No. 1.)

The defendant filed a motion to dismiss the indictment on October 13, 2011. (Docket No. 16.) In his motion, the defendant argues that the application of § 922(g)(8) to him is inappropriate because he was not subject to the type of court order contemplated by the statute, and because his prosecution under this statute violates both his Second and Fifth Amendment rights. After the government filed its response in opposition to Larson's motion (Docket No. 19), the motion hearing was postponed pending a decision of the United States Court of Appeals for the Fourth Circuit in *United States v. Chapman*, 666 F.3d 220 (4th Cir.2012), in which the Fourth Circuit ultimately rejected a similar Second Amendment challenge to § 922(g)(8). After the Fourth Circuit is-

sued its opinion, Larson submitted a memorandum arguing that the facts in *Chapman* are distinguishable from the facts in his case. (Docket No. 20.) The government then submitted a responsive brief, arguing that *Chapman* controls the outcome in Larson's Second Amendment challenge. (Docket No. 22.) The court heard argument on the motion on February 8, 2012. Therefore, the matter is now ripe for disposition.

## II. *Discussion*

### A. Legal standard

Federal Rule of Criminal Procedure 12(b)(3)(B) provides that "a motion alleging a defect in the indictment" must be raised before trial. Fed.R.Crim.P. 12(b)(3)(B).

### B. Analysis

As stated above, the defendant urges the court to dismiss the indictment on several grounds. The statute under which the government prosecutes Larson, 18 U.S.C. § 922(g)(8), provides that it is unlawful for any person

who is subject to a court order that—

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8).

At the motion hearing, the defendant, through counsel, led with his Second Amendment challenge in the presentation of his arguments, injecting into the analytical framework governing such Second Amendment challenges his procedural due process argument and his contention that the state court judgment fails to qualify as the type of court order contemplated by the statute. The court will address his arguments in the same order in which the defendant presented them.

 As stated above, the defendant raises an as-applied Second Amendment challenge to 18 U.S.C. § 922(g)(8). The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In a 2008 opinion, the Supreme Court determined that the preexisting right guaranteed by the Second Amendment "was not unlimited, just as the First Amendment's right of free speech was not." *Dist. of Columbia v. Heller*, 554 U.S. 570, 595, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Thereafter, in a 2010 opinion interpreting *Heller*, the United States Court of Appeals for the Fourth Circuit introduced a two-part approach for Second Amendment challenges. *United*

*States v. Chester,* 628 F.3d 673, 680 (4th Cir.2010). First, the district court must determine "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* (internal quotation marks and citation omitted). "This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification." *Id.* (citing *Heller,* 554 U.S. at 625–26, 128 S.Ct. 2783). If this inquiry yields a finding that the conduct at issue was not intended to be included within the scope of the right, then the challenged law is valid. *Id.* However, if the "challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an appropriate form of means-end scrutiny." *Id.* (citation omitted). With respect to this second step, *Heller* "left open the issue of the standard of review, rejecting only rational-basis review." *Id.* "Accordingly, unless the conduct at issue is not protected by the Second Amendment at all, the Government bears the burden of justifying the constitutional validity of the law." *Id.*

█ The Fourth Circuit recently applied this two-part analysis in *Chapman,* a case in which the defendant argued that the application to him of § 922(g)(8), the same provision that Larson challenges, violated his Second Amendment right to bear arms. *Chapman,* 666 F.3d at 224–25. In *Chapman,* the Fourth Circuit passed on the first part of the *Chester* analysis, concluding that it did not need to resolve whether § 922(g)(8) imposed a burden on conduct that fell within the Second Amendment's purview because, even if Chapman's Second Amendment rights were triggered, § 922(g)(8), as applied to Chapman, passes constitutional muster under intermediate scrutiny. *Id.* at 225. Under intermediate scrutiny, the government bears the burden of establishing a reasonable fit between the challenged statute and a substantial governmental objective, and the *Chapman* court concluded that the government satisfied its burden in this respect. *Id.* at 225, 226.

Initially, the Fourth Circuit concluded that the government shouldered its burden of establishing that "reducing domestic gun violence is a substantial governmental objective of § 922(g)(8)." *Id.* at 227. In ascertaining whether the government carried its burden of establishing a reasonable fit between § 922(g)(8) and this substantial government objective, the Fourth Circuit noted that "numerous features of § 922(g)(8) ... keep its prohibitory sweep exceedingly narrow." *Id.* at 228. More specifically, the Fourth Circuit observed (1) that § 922(g)(8) limits its prohibitory sweep to persons under a domestic violence protective order "then currently in force"; (2) that the statute demands that the order issue "after a hearing satisfying the fundamental requirements of procedural due process"; (3) that the statute limits its reach not only to the domestic context, but further to "a class of persons who have been restrained 'from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child'"; and (4) that § 922(g)(8) mandates that the order explicitly prohibit "'the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.'" *Id.* at 228–29 (quoting 18 U.S.C. § 922(g)(8)). Based on these narrowing features and on the fact that the defendant in *Chapman* failed to cast doubt on the social science evidence proffered by the government in an attempt to satisfy its reasonable fit burden, the Fourth Circuit

held that "the government has carried its burden of establishing a reasonable fit between the substantial governmental objective of reducing domestic gun violence and keeping firearms out of the hands of persons who are currently subject to a court order which [satisfies the requirements of § 922(g)(8) ]." *Id.* at 230. Finally, although, as the Fourth Circuit noted, the prohibitory sweep of § 922(g)(8) "may be somewhat over-inclusive[,]" this point "does not undermine the constitutionality of § 922(g)(8) …, however, because it merely suggests that the fit is not a perfect one; a reasonable fit is all that is required under intermediate scrutiny." *Id.* at 231.

With this Second Amendment framework in place, the court now turns to the defendant's claims in the instant case. Larson seeks to distinguish his situation from that of Chapman, contending that the aspects of § 922(g)(8) that render the statute's "prohibitory sweep exceedingly narrow" are not operative under the facts of the instant case. *Id.* at 228. At first blush, it seems that the court order in this case clearly satisfies all of the requirements of the statute. However, upon closer examination, and for reasons skillfully argued at the motion hearing by counsel for the defendant, the court is convinced that this case presents a close question.

### 1. Persons under a protective order currently in force

■ The Fourth Circuit stated in *Chapman* that the first aspect that nar-

rows § 922(g)(8)'s prohibitory sweep is that the statute affects only "persons under a [domestic violence protective order ("DVPO")] then currently in force." *Id.* (citing 18 U.S.C. § 922(g)(8) ("It shall be unlawful for any person … who *is* subject to a court order …." (emphasis added))). The defendant argues that this limiting function of § 922(g)(8) is rendered irrelevant in the instant case because the underlying state court judgment is not a formal DVPO issued pursuant to state law; instead, the defendant points out, it is merely a state court judgment that features a handwritten condition of a suspended sentence.[1] However, contrary to the defendant's assertion, the language of the statute does not require a formal DVPO issued pursuant to state law. Instead, § 922(g)(8) requires only a "court order" that satisfies the elements of the statute outlined in subsections (A)-(C). 18 U.S.C. § 922(g)(8). Hence, the defendant's argument proves unavailing.[2]

### 2. Court order must have issued after a hearing satisfying the requirements of procedural due process

■ The second aspect that narrows § 922(g)(8)'s prohibitory reach is that the statute requires "the subject DVPO to have issued after a hearing satisfying the fundamental requirements of procedural due process." *Chapman*, 666 F.3d at 228 (citing *Mullane v. Cent. Hanover Bank &*

---

1. The government relies on the handwritten text in the state court judgment ("no violent, threatening or abusive contact w/victim") to trigger § 922(g)(8)'s mandate that the accused be subject to a "court order" that complies with the statute's requirements. 18 U.S.C. § 922(g)(8).

2. The court also notes that the Fourth Circuit in *Chapman*, after reciting the first narrowing feature of § 922(g)(8), commented that the

statute's restrictive reach was further limited in Chapman's case by the fact that the DVPO in that case had a 180–day duration. *Chapman*, 666 F.3d at 228. In the instant case, § 922(g)(8)'s proscriptive reach is likewise limited further by the fact that the "no violent, threatening or abusive contact w/victim" condition written on the state court judgment expires at the time of the two-year suspended sentence. (Docket No. 16–1 at 2.)

*Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("[A]t a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.")). It is at this juncture within *Chester's* analytical framework that the defendant raises his Fifth Amendment procedural due process challenge. The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The core guarantee of procedural due process is the right to notice and an opportunity to be heard. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

To the extent that Larson argues that his prosecution under § 922(g)(8) violates his procedural due process rights because he received no notice that possessing a firearm constituted a violation of the statute, his argument is foreclosed by the decisions of federal circuit courts across the country—courts "have uniformly rejected [procedural] due process challenges to § 922(g)(8) based on the defendant's lack of awareness that his possession of a firearm was a federal offense."[3] *United States v. Miller,* 646 F.3d 1128, 1133 n. 6

(8th Cir.2011); *see also United States v. Kafka,* 222 F.3d 1129, 1131 (9th Cir.2000), *cert. denied,* 532 U.S. 924, 121 S.Ct. 1365, 149 L.Ed.2d 293 (2001); *United States v. Reddick,* 203 F.3d 767, 770 (10th Cir.2000); *United States v. Baker,* 197 F.3d 211, 220 (6th Cir.1999), *cert. denied,* 528 U.S. 1197, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000); *United States v. Meade,* 175 F.3d 215, 226 (1st Cir.1999); *United States v. Bostic,* 168 F.3d 718, 722 (4th Cir.1999), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999); *United States v. Wilson,* 159 F.3d 280, 289 (7th Cir.1998), *cert. denied,* 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 774 (1999).

However, Larson's procedural due process challenge to § 922(g)(8) focuses more on the hearing that led to the issuance of the underlying court order than on his lack of knowledge that possessing a firearm constituted a federal offense. Larson's contention that his prosecution under § 922(g)(8) violates his procedural due process rights arguably stands in direct opposition to the Fourth Circuit's determination in *Chapman* that the language of § 922(g)(8)(A) narrows the statute's prohibitory sweep by "satisfying the fundamental requirements of procedural due process." *Chapman,* 666 F.3d at 228; *see also* 18 U.S.C. § 922(g)(8)(A) (providing

---

**3.** The circuit courts that have rejected similar procedural due process challenges have articulated two basic principles in support of their decisions. First, the courts have explained that, to satisfy the *mens rea* requirement that one must knowingly violate § 922(g)(8), *see* 18 U.S.C. § 924(a)(2), the prosecution does not need to prove that the defendant knew that his actions were unlawful, but only that he knew that he was engaging in the activity that the legislature proscribed. *United States v. Emerson,* 270 F.3d 203, 216 (5th Cir.2001) (citing *Bryan v. United States,* 524 U.S. 184, 191–96, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998)), *cert. denied,* 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 184 (2002); *see also Staples v. United States,* 511 U.S. 600, 602, 114

S.Ct. 1793, 128 L.Ed.2d 608 (1994); *United States v. Bostic,* 168 F.3d 718, 722–23 (4th Cir.1999), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999). Second, the courts have concluded that, based on the defendant's prior abusive conduct which led to the entry of the protective order, the defendant had removed himself from the class of ordinary citizens and, therefore, could not reasonably expect to be free from regulation while possessing a firearm. *Bostic,* 168 F.3d at 722; *see also, e.g., United States v. Napier,* 233 F.3d 394, 399 (6th Cir.2000); *United States v. Baker,* 197 F.3d 211, 220 (6th Cir. 1999), *cert. denied,* 528 U.S. 1197, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000); *United States v. Meade,* 175 F.3d 215, 226 (1st Cir.1999).

that the underlying court order must be "issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate"). Larson essentially contends that, because § 922(g)(8) allegedly requires a formal DVPO as the predicate "court order" under the statute, the hearing that produces the court order must concentrate on the question that courts issuing DVPOs are required to address—specifically, whether the subject poses a current threat of violence.[4] As support for this argument, the defendant relies on language in *United States v. Mahin*, 668 F.3d 119 (4th Cir.2012). In *Mahin*, the Fourth Circuit stated that, "when Congress enacted § 922(g)(8) it was 'legislating against the background of the rule of American law that for an injunction to issue there must be a likelihood that irreparable harm will occur.'" *Id.* at 126 (quoting *United States v. Elkins*, 780 F.Supp.2d 473, 479 (W.D.Va. 2011)); *see also Chapman*, 666 F.3d at 228 ("'Congress in enacting section 922(g)(8)(C)(ii) proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph (C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined.'" (quoting *United States v. Emerson*, 270 F.3d 203,

262 (5th Cir.2001), *cert. denied*, 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 184 (2002))). The Fourth Circuit continued by recognizing that, "[w]ith respect to protective orders under Virginia law, . . . 'courts may only prohibit contact with a petitioner . . . if the prohibition is necessary to protect the health and safety of those persons.'" *Mahin*, 668 F.3d at 126 (quoting *Elkins*, 780 F.Supp.2d at 479).

Although Larson's procedural due process argument presents a close question, the defendant's contention must fail based on the facial language of § 922(g)(8)(C). Pursuant to the statute, the underlying court order complies with § 922(g)(8) if it "includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child." 18 U.S.C. § 922(g)(8)(C)(i). However, subsection (C) offers an alternative avenue for compliance, providing that the court order also conforms to § 922(g)(8) if it "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." *Id.* § 922(g)(8)(C)(ii). Hence, by offering the two-pronged alternative represented by subsection (C), Congress consciously elected not to always require an explicit finding that the defendant represents a "credible threat" of violence.[5] *See Emerson*, 270 F.3d at 214

---

4. The case law interpreting § 922(g)(8)(A) explains, first, that "actual notice" does not require notice of the content of the hearing, but only notice of the hearing itself, and, second, that "opportunity to participate" does not require actual participation, but only that the defendant could have participated in the hearing. *E.g., United States v. Young*, 458 F.3d 998, 1005–09 (9th Cir.2006), *cert. denied*, 549 U.S. 1230, 127 S.Ct. 1305, 167 L.Ed.2d 118 (2007). However, Larson does not necessarily quarrel with this case law; instead, his argument is more subtle, alleging that, as stated above, the hearing implicitly contem-

plated by § 922(g)(8) is the type of hearing mandated by state law for the issuance of a DVPO.

5. To the extent Larson argues that, although the statute's language does not require such a finding to appear on the face of the order, Congress nonetheless enacted § 922(g)(8) with the understanding that such a finding would still be made through a hearing related to a formal DVPO, this argument likewise fails. As discussed above, the language of the statute does not require a formal DVPO, but instead, requires only a "court order" that

("Although an express judicial finding of future dangerousness pursuant to section 922(g)(8)(C)(i) is one way section 922(g)(8)'s firearms disability can attach, to construe section 922(g)(8) as always requiring an express judicial finding would be to substitute the word 'and' for the word 'or' that appears at the end of 922(g)(8)(C)(i)."); *id.* ("If Congress intended to require an express judicial finding, it would have arranged the elements as 922(g)(8)(A)-(D) and used the word 'and' rather than 'or' to join them."); Tom Lininger, *A Better Way to Disarm Batterers*, 54 Hastings L.J. 525, 544 n. 82 (2003) (noting that the legislative history of § 922(g)(8) "clearly contemplates a firearms disability without . . . an express judicial finding of future dangerousness" (internal quotation marks omitted) (quoting *Emerson*, 270 F.3d at 215)). For this reason, the language of § 922(g)(8)(C) demonstrates that the defendant's reliance on *Mahin* is misplaced. Bearing in mind the disjunctive approach represented by subsection (C), the court order at issue in the instant case clearly satisfies subsection (C) through the alternative offered in (ii)—the court order mandates "no violent, threatening or abusive contact w/victim."[6] (Docket No. 16–1 at 2.)

In any event, the court order in this case supports the conclusion that the state court judge who issued the judgment did, in fact, make *some* finding related to the defendant's current potential for violence. Because the state court included on the judgment the mandate "no violent, threatening or abusive contact w/victim[,]" the presiding judge apparently decided that it was necessary to impose a restriction that prohibited Larson from having violent contact with the victim. Although the defendant challenges the realistic import of the state court judge's decision to include such a restriction,[7] defendants prosecuted under § 922(g)(8) are generally not permitted to collaterally attack the validity of the underlying court order. *See, e.g., United States v. Wescott*, 576 F.3d 347, 352–53 (7th Cir.2009), *cert. denied,* — U.S. —, 130 S.Ct. 1546, 176 L.Ed.2d 116 (2010); *United States v. Arledge*, 220 Fed.Appx. 864, 867 (10th Cir.2007); *United States v. Young*, 458 F.3d 998, 1005 (9th Cir.2006), *cert. denied,* 549 U.S. 1230, 127 S.Ct. 1305, 167 L.Ed.2d 118 (2007); *United States v. Hicks*, 389 F.3d 514, 534 (5th Cir.2004), *cert. denied,* 546 U.S. 1089, 126 S.Ct. 1022, 163 L.Ed.2d 853 (2006); *Emerson*, 270 F.3d at 264; see also *United States v. Bena*, 664 F.3d 1180, 1186 (8th Cir.2011) ("[T]he text of § 922(g)(8) is not limited to

---

satisfies the elements of the statute. 18 U.S.C. § 922(g)(8). Furthermore, to the extent that Larson argues that a conviction under Va.Code § 18.2–57.2 for assault and battery against a family or household member encompasses a broader range of conduct than that which is required as a predicate for the issuance of a state law DVPO, this contention must fail for the same reason—the language of § 922(g)(8) does not require a formal DVPO.

6. The Fourth Circuit has concluded that a court order featuring language ("shall refrain from abusing [the victim]") that closely mirrors the language in Larson's judgment satisfies § 922(g)(8)(C)(ii). *Bostic,* 168 F.3d at 722.

7. At the motion hearing, the defendant produced evidence allegedly indicating that judges of the Charlottesville Juvenile and Domestic Relations Court habitually impose such restrictions on defendants in like situations as a mere matter of form. According to the evidence presented, judges routinely include such restrictions whenever they elect not to impose a strict no contact order. In an abundance of caution, the judges allegedly include the "no violent, threatening or abusive contact" language when they opt to permit contact between the defendant and the victim.

persons whose no-contact orders are not subject to collateral attack.... Bena was subject to a qualifying no-contact order under § 922(g)(8), and that alone subjected him to the requirements of that provision.").

In short, the judgment at issue in the instant case was issued after a hearing of which Larson received actual notice and at which he had an opportunity to participate and, furthermore, the judgment explicitly satisfies the requirements of § 922(g)(8)(C)(ii). As the Fourth Circuit observed in *Chapman*, the provisions of § 922(g)(8) comply with the fundamental requirements of procedural due process. *Chapman*, 666 F.3d at 228. Because the underlying state court judgment in this case satisfies the provisions contained in subsections (A) and (C)(ii), prosecuting Larson based on this "court order" does not violate his procedural due process rights.

### 3. Certain class of persons within the domestic context

The Fourth Circuit explained in *Chapman* that subsection (B) of § 922(g)(8) offers two features that further narrow the reach of the statute. *Id.* First, § 922(g)(8)(B) limits the scope of the statute to the domestic context by requiring that the court order relate to one's "intimate partner" or to the "child of such intimate partner or person." 18 U.S.C. § 922(g)(8)(B). Larson does not contend that the underlying court order in his case fails to comply with this aspect of the statute. Second, subsection (B) further restricts the statute's reach to "a class of persons who have been restrained 'from harassing, stalking, or threatening an intimate partner of such person or child of

such intimate partner or person, or engaging in conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child.'" *Chapman*, 666 F.3d at 229 (quoting 18 U.S.C. § 922(g)(8)(B)). Likewise, Larson does not dispute that he falls within the class of persons contemplated by subsection (B).

### 4. Explicitly prohibit the use, attempted use, or threatened use of physical force

The fourth and final narrowing feature of the statute is found in subsection (C)(ii),[8] which requires that the court order "by its terms explicitly prohibit[ ] the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8)(C)(ii). As stated above, the Fourth Circuit has determined that the phrase "shall refrain from abusing [the victim]" (language that closely mirrors the language used in Larson's judgment) satisfies subsection (C)(ii)'s requirement. *Bostic*, 168 F.3d at 722. Although the defendant argues that the limiting function performed by subsection (C)(ii) is inoperative in his case based on his contention that § 922(g)(8) requires a formal DVPO issued after a hearing pursuant to state law, the court, as discussed above, has concluded that this argument must fail based on the statute's unequivocal language. Therefore, because the court order in this case contains the explicit prohibition contemplated by subsection (C)(ii), the state court judgment satisfies the requirements of the statute and, thus, may properly serve as the basis for Larson's prosecution under § 922(g)(8).

---

**8.** The Fourth Circuit in *Chapman* did not address the constitutionality of subsection (C)(i) because subsection (C)(ii) comprised the least serious of the disjunctive statutory conduct set forth in § 922(g)(8)(C). *Chapman*, 666 F.3d at 227–28 (citing *United States v. Vann*, 660 F.3d 771, 774 (4th Cir.2011) (en banc) (per curiam for en banc majority)).

## III. *Conclusion*

As stated above, the defendant's arguments concerning the statute's application to him are not frivolous—this motion presents a close question. However, for the reasons set forth above, the court concludes that the features of § 922(g)(8) that limit its prohibitory reach are satisfied in the defendant's case such that Larson's prosecution under § 922(g)(8) does not violate his rights under the Second or Fifth Amendments. Accordingly, the defendant's motion will be denied.