PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

v.

CHRISTOPHER D. MAHIN,

  *Defendant-Appellant.*

No. 10-5292

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Anthony J. Trenga, District Judge.
(1:10-cr-00288-AJT-1)

Argued: December 6, 2011

Decided: February 3, 2012

Before WILKINSON, WYNN, and FLOYD, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Wynn and Judge Floyd joined.

## COUNSEL

**ARGUED:** Kevin R. Brehm, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. George Zachary Terwilliger, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

**ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellant. Neil H. Mac-Bride, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

Christopher D. Mahin was convicted and sentenced on two counts of possessing a firearm or ammunition while subject to a domestic violence protective order in violation of 18 U.S.C. § 922(g)(8). He appeals the district court's determination that his convictions under § 922(g)(8) did not violate the Second Amendment. On this question, we affirm the judgment of the district court. But because it was plain error to convict and sentence Mahin on two separate counts for the simultaneous possession of a firearm and ammunition under § 922(g)(8), we reverse Mahin's conviction as to count two of the indictment, vacate his sentence, and remand for resentencing.

I.

A.

On April 19, 2010, the Alexandria Police Department arrested Mahin on a warrant for the assault and battery of his wife, PK. As PK would later explain, the arrest followed Mahin's aggressive behavior toward her and his threat to kill her: "he told me that he's going to kill me . . . . And it was just too much for me, and I was getting more afraid." Mahin further informed PK that when he was in combat with the Navy "he was taught how to kill people."

Represented by counsel at a hearing in Alexandria Juvenile and Domestic Relations Court, Mahin pled guilty to one count

of assault and battery against a family member. As part of the plea agreement, the court imposed a two-year domestic violence protective order, finding that PK had proven the allegation of family abuse by a preponderance of the evidence. "Family abuse" is defined in the order as "any act involving violence, force, or threat . . . which results in bodily injury or places one in reasonable apprehension of bodily injury and which is committed by a person against such person's family or household member." The order required Mahin to "refrain from committing further acts of family abuse" and to "have no further contact of any type" with PK. It also granted PK possession of the marital residence to the exclusion of Mahin.

The order advised that under Virginia law Mahin was prohibited from purchasing or transporting any firearm while the protective order was in effect. In addition, the order put Mahin on notice that if he possessed a firearm during the order's duration he would expose himself to federal prosecution. Specifically, the order included a "warning" in bold print and capital letters, which cautioned that "while this protective order is in effect, you may be subject to a federal penalty under the 1994 amendment to the Gun Control Act, 18 U.S.C. 922(g)(8), for possessing, transporting, or receiving a firearm."

Just over one hour after the court issued the order and an officer served it on Mahin, Mahin entered the Sharpshooters firearms retail store and small arms range in Lorton, Virginia. There, Mahin paid for a monthly membership, rented a Glock 22 handgun, and purchased two boxes of ammunition containing fifty rounds each. He proceeded to a firing lane for approximately thirty minutes of shooting, after which he returned the gun and left the range. Shortly thereafter, PK contacted the police when she arrived home to find Mahin's Sharpshooters membership card near the door inside her apartment.

### B.

Mahin was indicted on August 5, 2010 on two counts under 18 U.S.C. § 922(g)(8) for: (1) possession of a firearm while subject to an active protective order; and (2) possession of ammunition while subject to an active protective order. Mahin moved to dismiss the indictment on constitutional grounds, claiming that 18 U.S.C. § 922(g)(8)'s prohibition violated his Second Amendment right to keep and bear arms under the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008).

After a bench trial, the district court found that the government had proven the elements for both counts under § 922(g)(8) beyond a reasonable doubt. The court rejected Mahin's Second Amendment challenge, finding that "922(g)(8) is within the kind of categorical exemption that the Supreme Court in *Heller* recognized as presumptively valid." The court found that, alternatively, § 922(g)(8) survived heightened scrutiny because:

> There is clearly a compelling government interest in protecting individuals against violence within a domestic context, and there is clearly a tie between prohibiting people who are subject to those orders and who have demonstrated a disposition for violence from any access to any weapons that could be used to harm those who have the protections of the protective order.

With respect to the particular circumstances of Mahin's violation, the court observed that "once in possession of a firearm, the defendant had the ability to act in a way that may have allowed him to use that firearm not only against others but to leave the premises [of the shooting range] and use it against those that sought the protections of the protective order." For these reasons, the district court concluded that Mahin's convictions were constitutionally valid.

The district court sentenced Mahin on both counts to a period of time served, followed by three years of supervised release as to counts 1 and 2 to be served concurrently, and imposed a special assessment of $100 for each count of conviction.

Mahin raises two questions on appeal. First, he challenges the constitutionality of his convictions under the Second Amendment. Second, he contends that it was plain error for the district court to convict and sentence him on two counts of violating 18 U.S.C. § 922(g)(8) for a single act of possession. We shall address each issue in turn.

## II.

As an initial matter, we note there is no question that the elements of 18 U.S.C. § 922(g)(8) were met in this case. Section 922(g)(8) provides that it shall be unlawful to possess a firearm or ammunition "in or affecting commerce" for any person:

who is subject to a court order that —

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

An intimate partner for purposes of § 922(g)(8)(B) and (C) is defined as "the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person." *Id.* § 921(a)(32).

Enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, which amended the Gun Control Act of 1968, § 922(g)(8) attempts to reduce domestic violence by temporarily banning firearm possession by those such as Mahin who have been found to constitute a threat to their intimate partner. Pub. L. No. 103-322, § 110401(c), 108 Stat. 1796, 2014-2015 (1994). The provision is one in a series under § 922(g) that disarm certain individuals whom Congress determined pose a heightened danger of misusing a firearm, including convicted felons ((g)(1)), unlawful users of controlled substances ((g)(3)), and domestic violence misdemeanants ((g)(9)).

On appeal, Mahin does not dispute the underlying validity of the protective order, which he agreed to while represented by counsel and has never sought to overturn. Nor does he dispute that his conduct while subject to that protective order violated 18 U.S.C. § 922(g)(8). Indeed, he stipulated before trial that PK met the definition of an intimate partner, that the firearm and ammunition at issue had traveled in and affected interstate commerce, and that the protective order was imposed after a hearing of which he had received notice and at which he had an opportunity to participate and was represented by counsel. And the district court properly concluded that the remaining requirements under § 922(g)(8)(B) and (C) were satisfied where the protective order instructed Mahin to "refrain from committing further acts of family abuse,"

defined in the order to include the use of force or the threat of bodily injury against a family member. But although Mahin's use of a firearm and ammunition at Sharpshooters falls squarely within § 922(g)(8)'s prohibition, he contends that the Second Amendment requires that we reverse his convictions. For the reasons that follow, we reject Mahin's constitutional challenge.

### III.

### A.

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller*, the Supreme Court held that the Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. *Heller* indicated, however, that an individual right to keep and bear arms is subject to limits, including, for example, "longstanding prohibitions on possession of firearms by felons" which are "presumptively lawful regulatory measures." *Id.* at 626-27 & n.26. It has now fallen to the lower courts to delineate the boundaries of the Second Amendment right recognized in *Heller*, including its applicability to persons whose involvement with firearms Congress has limited in the interest of public welfare and safety.

Mahin raises his Second Amendment challenge in the face of mounting case law declining to overturn on Second Amendment grounds criminal convictions under 18 U.S.C. § 922(g). Most relevant, since Mahin brought his appeal our court in *United States v. Chapman*, ___ F.3d ___, No. 10-5071, 2012 WL 11235 (4th Cir. Jan. 4, 2012), upheld an 18 U.S.C. § 922(g)(8) conviction against a Second Amendment challenge. Other courts to have confronted Second Amendment challenges to § 922(g)(8) since *Heller*, including both the Eighth and Tenth Circuits, have concluded that the section

easily passes constitutional muster. *See United States v. Bena*, ___ F.3d ___, No. 10-2834, 2011 WL 6376649 (8th Cir. Dec. 21, 2011); *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010); *United States v. Elkins*, 780 F. Supp. 2d 473 (W.D. Va. 2011); *United States v. Luedtke*, 589 F. Supp. 2d 1018 (E.D. Wis. 2008); *United States v. Knight*, 574 F. Supp. 2d 224 (D. Me. 2008). Indeed, appellant has not pointed us to a single court of appeals decision in the aftermath of *Heller* that has reversed any § 922(g) conviction on Second Amendment grounds. Rather, the courts of appeals have generally applied intermediate scrutiny to uphold Congress' effort under § 922(g) to ban firearm possession by certain classes of non-law-abiding, non-responsible persons who fall outside the Second Amendment's core protections.

The great majority of these decisions have affirmed § 922(g) convictions outright. *See Chapman*, 2012 WL 11235 ((§ 922(g)(8)); *Bena*, 2011 WL 6376649 (same); *United States v. Staten*, ___ F.3d ___, No. 10-5318, 2011 WL 6016976 (4th Cir. Dec. 5, 2011) (§ 922(g)(9), domestic violence misdemeanant); *United States v. Booker*, 644 F.3d 12 (1st Cir. 2011) (same); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc) (same); *United States v. White*, 593 F.3d 1199 (11th Cir. 2010) (same); *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011) (§ 922(g)(3), unlawful user of controlled substances); *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010) (per curiam) (same); *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011) (§ 922(g)(1), convicted felon); *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010) (same). In *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010), our court remanded a Second Amendment challenge to a conviction under § 922(g)(9) back to the district court for further evidentiary development. In *Staten*, however, where the government had already presented the district court with ample evidence of a reasonable fit between § 922(g)(9) and the goal of reducing domestic gun violence, we upheld a conviction under § 922(g)(9) against a Second Amendment challenge. *See* 2011 WL 6016976.

We join the growing consensus in holding that Mahin's conviction under § 922(g)(8) is constitutionally sound. Mahin asks that in reviewing his claim we recognize that Second Amendment protections apply outside the home and extend to persons subject to domestic protective orders. But the Supreme Court has not clarified, and we have not held, that the Second Amendment extends beyond the home or to perpetrators of domestic abuse. *See United States v. Masciandaro*, 638 F.3d 458, 474-76 (4th Cir. 2011) (declining to address whether the Second Amendment applies outside the home); *Chapman*, 2012 WL 11235, at *3 (declining to decide whether the Second Amendment applies to those subject to § 922(g)(8)); *Staten*, 2011 WL 6016976, at *5 (same with respect to § 922(g)(9)).

We may likewise avoid guesswork on the scope of Second Amendment protection here—Mahin's constitutional claim is unavailing even if one assumes that he engaged in activity which implicates the Second Amendment. As in *Chapman*, we may apply intermediate scrutiny to uphold Mahin's § 922(g)(8) conviction, assuming without deciding that his conduct falls within the Second Amendment's ambit. *Chapman*, 2012 WL 11235, at *3 (concluding that if Chapman's conduct fell within the Second Amendment, "intermediate scrutiny is the appropriate standard of scrutiny for Chapman and similarly situated persons [under § 922(g)(8)]"); *see also Staten*, 2011 WL 6016976, at *5 (same with respect to § 922(g)(9)).

## B.

Intermediate scrutiny requires the government to demonstrate that the statute at issue has a "reasonable fit" with an important government interest. *See Chester*, 628 F.3d at 683. Section 922(g)(8) satisfies that standard, as does the statute's application to Mahin's firearm use the same day he was served with a protective order.

It is well-established that "[f]irearms and domestic strife are a potentially deadly combination nationwide," *United States v. Hayes*, 555 U.S. 415, 427 (2009), and neither party disputes that § 922(g)(8) serves a substantial government interest in preventing domestic gun violence. Indeed, in *Chapman* we held that "[b]ased upon § 922(g)(8)'s legislative history, the relevant case law, and common sense . . . the government has carried its burden of establishing that reducing domestic gun violence is a substantial government objective of § 922(g)(8)." *Chapman*, 2012 WL 11235, at *4.

Section 922(g)(8) advances that objective by building upon the foundation of a state domestic violence protective order. For a victim of domestic abuse, seeking refuge in the court system may be a measure of last—or even desperate—resort. Indeed, it may require some summoning of courage for a victim to request a protective order against an intimate partner. But although a restraining order aims to avert a credible future risk of domestic violence, it offers no guarantee. As Senator Chafee, a sponsor of the § 922(g)(8) legislation, explained, abuse victims who have secured a protective order "remain[ ] vulnerable" to harm: "There have been far, far too many dreadful cases in which innocent people . . . [are] wounded or killed by a former boyfriend or girlfriend, partner, or other intimate using a gun—despite the fact that the attacker was subject to a restraining order." 139 Cong. Rec. 30,578-79 (1993) (statement of Sen. John Chafee).

In this context, § 922(g)(8) provides a valued safeguard. Its prohibition reduces the likelihood that a violent partner bent on revenge or intimidation will make use of an accessible firearm and turn a threatening situation into a fatal one. In the words of Senator Wellstone, another sponsor of the legislation: "All too often the only difference between a battered woman and a dead woman is the presence of a gun." 140 Cong. Rec. 14998 (1994) (statement of Sen. Paul Wellstone).

Such is the human dimension of the problem that Congress sought to address with this particular provision—to afford

those attempting to escape from an abusive relationship a measure of security and peace of mind. Congress was well aware that anger management issues may arise in domestic settings, and it sought to temper the risk that the most volatile confrontations, including those inflamed by alcohol, would not escalate further with easy access to a gun. As our court concluded in *Staten* and *Chapman*, it takes no special pre-science to understand the familiar link between domestic abuse and gun violence. Indeed, the *Staten* court reached a series of conclusions relevant here:

> (1) domestic violence is a serious problem in the United States; (2) the rate of recidivism among domestic violence misdemeanants is substantial; (3) the use of firearms in connection with domestic violence is all too common; (4) the use of firearms in connection with domestic violence increases the risk of injury or homicide during a domestic violence incident; and (5) the use of firearms in connection with domestic violence often leads to injury or homicide.

2011 WL 6016976, at *11. Based on these findings, the *Staten* court held that prohibiting domestic violence misdemeanants from possessing firearms under § 922(g)(9) was a tailored and reasonable method to address domestic gun violence. Again in *Chapman*, where the government's "reasonable fit proffer . . . faithfully track[ed] the one it made with respect to § 922(g)(9)," we incorporated the *Staten* court's five conclusions into our decision that Chapman's conviction under § 922(g)(8) readily satisfied the intermediate scrutiny test. *Chapman*, 2012 WL 11235, at *7-*8.

Before the district court in this case, the government relied on the same evidence chronicled in *Staten* and credited in *Chapman*. And as we already concluded in *Chapman*, the *Staten* court's findings support Mahin's conviction under § 922(g)(8). Inasmuch as our court has already held in *Staten*

that § 922(g)(9) represents a constitutionally valid approach to prevent domestic violence, the result could hardly be any different under § 922(g)(8), which is even more narrowly tailored to address the threat of recurring domestic abuse in two main respects.

First, § 922(g)(8)'s prohibition on firearm possession is temporally limited and therefore "exceedingly narrow." *Chapman*, 2012 WL 11235, at *6. Rather than imposing a lifelong prohibition, section 922(g)(8) applies for the limited duration of the domestic violence protective order (in this case, two years). It is thus a temporary burden during a period when the subject of the order is adjudged to pose a particular risk of further abuse. *See Knight*, 574 F. Supp. 2d at 226 (finding that § 922(g)(8) is "quite narrow" in part because "the prohibition lasts only as long as the underlying state court order is in effect"); *Elkins*, 780 F. Supp. 2d at 479 (same).

Second, section 922(g)(8) applies only to persons individually adjudged to pose a future threat of domestic abuse "after a hearing of which such person received actual notice, and at which such person had an opportunity to participate." 18 U.S.C. § 922(g)(8)(A). We recognized in *Chapman* that § 922(g)(8)(A)'s "procedural due process" requirements are a notable "narrowing feature" of the statute. *Chapman*, 2012 WL 11235, at *6. Moreover, section 922(g)(8)(C) requires that the underlying protective order either "include[ ] a finding that such person represents a credible threat to the physical safety of such intimate partner," 18 U.S.C. § 922(g)(8)(C)(i), or "by its terms explicitly prohibit[ ] the use, attempted use, or threatened use of physical force against such intimate partner," *id.* (C)(ii).

In *Chapman*, the defendant's conviction satisfied the elements of § 922(g)(8)(A)-(B) and (C)(ii), as does Mahin's conviction here. But whether a finding that the person represents a credible threat is explicit in the order's language or not, it is a necessary step in the court's decision to issue the injunc-

tive order. As the district court in *Elkins* recognized, when Congress enacted § 922(g)(8) it was "legislating against the background of the rule of American law that for an injunction to issue there must be a likelihood that irreparable harm will occur." 780 F. Supp. 2d at 479. With respect to protective orders under Virginia law, for example, "courts may only prohibit contact with a petitioner . . . if the prohibition is necessary to protect the health and safety of those persons." *Id.* (citing Va. Code Ann. § 16.1-279.1(A)(2)). The district court thus properly found in this case that the injunction against Mahin to refrain from committing further acts of abuse was necessarily based on "a finding that the defendant represents a credible threat to the physical safety of an intimate partner."

The risk of recidivism and future gun violence is therefore especially salient with respect to persons covered by § 922(g)(8), namely those personally enjoined from committing future acts of domestic abuse. In light of the sound reasoning in *Staten* as to § 922(g)(9), and the obvious fit between § 922(g)(8) and the substantial public interest in reducing domestic violence, the government has met its constitutional burden.

### IV.

Mahin argues, however, that his Second Amendment challenge must succeed in view of the facts of his firearm possession in this case. We are unpersuaded by Mahin's effort to recast his conduct as benign—his threatening behavior and disregard of the protective order posed precisely the danger contemplated by § 922(g)(8).

### A.

First, Mahin makes much of the fact that the underlying protective order did not contain any specific findings that he had previously used a firearm, that he had actually committed any violent act against the petitioner, or that she had actually

sustained bodily injury. The lack of such findings, he insists, demonstrates that he was not a sufficient danger to PK to justify the burden on his Second Amendment rights.

Mahin's contention, however, is belied by the fact that the protective order was imposed in conjunction with his guilty plea to assault and battery against a family member. More troubling, such arguments trivialize the harms visited not only by actual domestic violence but by the threat of it. The apprehension that an abusive partner will make good on "a credible threat" is not a prospect the statute ignores. *See* 18 U.S.C. § 922(g)(8)(C)(i). Nor does the Constitution require an endangered spouse to await the actual infliction of a serious injury. As PK explained, "he told me that he's going to kill me . . . And it was just too much for me, and I was getting more afraid."

Such threats, which place an intimate partner in "reasonable apprehension of death . . . or bodily injury," are part of Virginia's definition of domestic abuse. Va. Code Ann. § 16.1-228. And § 922(g)(8) reaches not only those restrained from acts of violence but those restrained from "engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner." 18 U.S.C. § 922(g)(8)(B). The Second Amendment does not disable Congress and the states from erecting preventative measures to ensure that the subject of a procedurally valid protective order is restricted in his ability to carry out his threatened harms. The absence of findings in the protective order of prior violence or prior bodily injury inflicted on PK does not suffice to vitiate Mahin's § 922(g)(8) conviction on Second Amendment grounds.

### B.

Mahin also insists that his possession of a firearm for a limited period of time in the controlled environment of a commercial shooting range is conduct that under the Second

Amendment must be exempted from prosecution under § 922(g)(8). This argument is equally unavailing.

Although not required by § 922(g)(8), the protective order served on Mahin put him on notice that "while this protective order is in effect, you may be subject to a federal penalty under the 1994 amendment to the Gun Control Act, 18 U.S.C. 922(g)(8), for possessing, transporting, or receiving a firearm." Mahin disregarded the order's warning almost immediately after receiving it. Just over one hour after the order was served, Mahin had left the court in Alexandria and was using a Glock 22 .40 caliber handgun at the Sharpshooters firing range in Lorton, where in addition to renting the firearm, he purchased a monthly range membership and 100 rounds of .40 caliber 165 grain full metal jacket ammunition.

Mahin contends that the rental of a firearm in the controlled setting of a firing range is a far cry from posing any danger to PK. But as the district court found, once Mahin possessed the firearm he possessed the power to use the firearm against others in the vicinity or "to leave the premises and use it against those that sought the protections of the protective order." The evidence showed that Mahin had unfettered access to the handgun, that other customers were simultaneously using the firing range only feet away, and that the range master supervised the firing lanes from behind a glass window in another room. Given the layout and minimal security of the Sharpshooters, the government established the ease with which one might walk out of the store with a firearm to inflict injury elsewhere, a point that was illustrated by a prior incident when an individual shoplifted a rented firearm from the Lorton Sharpshooters at a time of heavy customer traffic.

It is of no moment that in this particular instance Mahin did not exit the store with the handgun in tow. Mahin had threatened to kill his wife, pled guilty to assault and battery, and was adjudged to pose a credible threat of future harm. He proceeded directly from courthouse to firing range and his pur-

chase of a monthly range membership signaled that he would return. He then violated the protective order by visiting the marital residence where he deposited his Sharpshooters membership card, placing PK once again in apprehension of what might await.

Moreover, our precedent indicates the district court is not required to speculate on a case-by-case basis what violent acts may have unfolded had the government failed to prosecute under § 922(g)(8). In *Chapman* we noted specifically that a conviction under § 922(g)(8)(A)-(B) and (C)(ii) is constitutional even if the statute's "prohibitory net . . . may be somewhat over-inclusive" in reaching persons who would not misuse a firearm if permitted to possess one. *Chapman*, 2012 WL 11235, at *8. For intermediate scrutiny has never been held to require a perfect end-means fit. It is sufficient that § 922(g)(8) rests on an established link between domestic abuse, recidivism, and gun violence and applies to persons already individually adjudged in prior protective orders to pose a future threat of abuse. The obvious utility of Congress' chosen means in advancing Congress' indisputably important ends relieves trial courts of the need to ruminate in every case on what might have been if not for an indictment under § 922(g)(8).

V.

Finally, Mahin argues that the district court erred in convicting and sentencing him on two counts under § 922(g)(8) when the two counts arose from the simultaneous possession of a firearm and ammunition. Because Mahin raises this issue for the first time on appeal, he must establish "that an error occurred, that the error was plain, and that the error affected his substantial rights." *United States v. Hastings*, 134 F.3d 235, 239 (4th Cir. 1998). Mahin has met that burden here, and we shall exercise our discretion to notice the error. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

In *United States v. Dunford*, 148 F.3d 385 (4th Cir. 1998), we held that the defendant's simultaneous possession of multiple firearms and ammunition supported only one count of conviction under § 922(g). Mahin's indictment included two counts under §922(g)(8), one for the possession of a firearm and the other for the simultaneous possession of ammunition at the Sharpshooters firing range, which under *Dunford* constitutes only one violation. In light of *Dunford*, we agree with Mahin that the district court committed plain error in convicting and sentencing Mahin on both counts of the indictment. Because the court sentenced Mahin on each count and imposed a special assessment of $100 for each conviction, its error affected Mahin's substantial rights. We therefore affirm Mahin's conviction under 18 U.S.C. § 922(g)(8) as to count one, reverse his conviction as to count two for possession of ammunition while subject to a protective order, vacate his sentence, and remand for the limited purpose of resentencing in accordance with this decision.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*