J-A12041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SANDRA LEE CAREY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODMAN C. THOMPSON, JR. | : | |
| | : | |
| Appellant | : | No. 837 WDA 2021 |

Appeal from the Order Entered May 5, 2021
In the Court of Common Pleas of Cameron County Civil Division at No(s):
2021-627

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: MAY 20, 2022**

Appellant, Rodman C. Thompson, Jr., appeals *pro se* from the order of the Court of Common Pleas of the 59th Judicial District, Cameron County branch ("trial court") granting a final Protection From Abuse ("PFA") order against Appellant.  We affirm.

On April 22, 2021, Sandra Lee Carey ("Complainant") filed a PFA petition against Appellant, and on that same date a temporary PFA order was issued. A hearing was held on the petition on May 5, 2021, at which the court also addressed a separate petition filed by Appellant against Complainant.  After the hearing, the trial court entered a final PFA order that barred Appellant from having contact with Complainant for three years and required Appellant to relinquish any firearms in his possession for the duration of the PFA term.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court denied Appellant's request for a final PFA order against Complainant. **See** N.T., 5/5/21, at 63-67.[1] Appellant filed a timely notice of appeal.[2]

Appellant raises the following issues for our review:

[1.] Has the Pa. Women's Protection Act, under which the PFA was issued, been used to obtain an unconstitutional result (See *Gomillion v. Lightfoot*, 364 U. S. 339 (1960)); i.e. violating [Appellant's] 1st, 2nd, 4th, 5th, 6th & 7th Amendments, U.S. Const. rights; and, Art I §§1, 6, 8, 11, 25 & 26 [rights under the] Pa. Const[itution?]

[2.] Was administration of the Pa. Women's Protection Act, done in an unlawful and unconstitutional manner, such as to render the Temporary and Permanent PFA, void?

[3.] Did [the trial court act] in a manner inconsistent with due process at the 5/5/2021 hearing in the case?

[4.] Did [the trial court] agree/conspire with opposing counsel[] to continue to the []Permanent PFA hearing?

[5.] Did [the trial court] wrongly grant the []Permanent PFA relying on the alleged "preponderance of evidence" not supported by evidence, other than hearsay?

[6.] Did [Complainant] visit fraud upon this Court by falsely representing actions and allegations known to be false with the intent [that] this Court act upon those allegations to the detriment of [Appellant] for the purpose of obtaining the desired Final PFA Order[?]

[7.] Was the Permanent PFA issued to affect related litigation in Commonwealth Court?

_____

[1] The denial of Appellant's PFA petition is not presently before this Court.

[2] Appellant filed his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on July 26, 2021, and the trial court filed its Pa.R.A.P. 1925(a) opinion on September 21, 2021.

[8.] Was [the trial court's] refusal to produce transcripts from the 2015-259 PFA hearing, intended to obstruct justice?

Appellant's Brief at 5-6, 8-12 (some capitalization omitted).

In an appeal from the entry of a PFA order, we review the trial court's ruling to determine if it made an error of law or abused its discretion. *Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021); *Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*). "A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Kaur*, 259 A.3d at 509 (internal quotation marks and citation omitted).

In Appellant's first two issues, he argues that the "Pa. Women's Protection Act" is unconstitutional. Appellant's Brief at 5. Appellant cites a litany of federal and state constitutional provisions, but it appears that his challenges relate to two claims: (1) an alleged violation of his due process rights based upon his forced eviction from Complainant's home upon short notice and (2) the question of whether the final PFA order's requirement that he relinquish his firearms for three years comports with the Second Amendment to the United States Constitution and Article I, Section 21 of the Pennsylvania Constitution.[3] We note that there is no Pennsylvania "Women's

_____

[3] U.S. Const. Amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall
*(Footnote Continued Next Page)*

- 3 -

Protection Act," but we presume that Appellant's arguments relate to the Protection From Abuse Act ("PFA Act"), 23 Pa.C.S. §§ 6101-6122.[4]

To the extent that Appellant argues that the PFA Act is invalid under the due process clause, we find that this argument is waived because Appellant first raised it in his Pa.R.A.P. 1925(b) concise statement. "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Furthermore, "[a]n issue raised for the first time in a concise statement is waived." *Beemac Trucking, LLC v. CNG Concepts, LLC*, 134 A.3d 1055, 1058 (Pa. Super. 2016); *Irwin Union National Bank and Trust Co. v. Famous*, 4 A.3d 1099, 1104 (Pa. Super. 2010). The doctrine of waiver applies even where the issue is one of constitutional

_____

not be infringed."); Pa. Const. Art. I, § 21 ("The right of the citizens to bear arms in defence of themselves and the State shall not be questioned.").

[4] Appellant separately states in his brief that he seeks to have the "Pa. VAMA declared unconstitutional" and in his Pa.R.A.P. 1925(b) statement he argues that provisions of the "Violence Against Women's (Protection) Act, hereafter VAWA," are unconstitutional. Appellant's Brief at 1; Pa.R.A.P. 1925(b) Statement, 7/26/21, ¶1. Likewise, at oral argument, Appellant asserted that the "Violence Against Women Act" has been ruled unconstitutional by courts of other states.

To the extent Appellant would challenge the federal Violence Against Women Act ("VAWA"), we note that this legislation provides that a state domestic violence protection order is entitled to full faith and credit in the remaining states and territories and prohibits some individuals subject to a PFA order from owning a firearm regardless of the PFA order's specific directive regarding weapons. *See* 18 U.S.C. §§ 922(g)(8), 2265(a). However, these provisions have not yet been enforced against Appellant and therefore a constitutional challenge to them would be premature. In any event, Appellant did not raise a challenge to VAWA before the trial court, and such a challenge would be waived on appeal.

dimensions. *In the Interest of T.W.*, 261 A.3d 409, 425 n.9 (Pa. 2021). As Appellant was made aware of the grounds for this constitutional challenge when he was evicted from Complainant's home through the April 22, 2021 temporary PFA order, his failure to raise the issue before the trial court thus results in waiver of the claim. Pa.R.A.P. 302(a); *Beemac Trucking*, 134 A.3d at 1058; *Irwin Union*, 4 A.3d at 1104.

With respect to Appellant's argument concerning the infringement of his Second Amendment and Article I, Section 21 rights, Appellant did preserve this argument before the trial court. *See* N.T., 5/5/21, at 17. However, Appellant has cited no caselaw in any jurisdiction that holds that the compelled surrender of firearms by an individual subject to a PFA or similar protective order violates that individual's right to keep and bear arms. We are aware of no Pennsylvania case that addresses the constitutionality of the provisions of the PFA Act that permit the trial court to order the temporary relinquishment of firearms and other weapons in a final PFA order. However, our review reveals that various federal courts of appeals have upheld, in the face of a Second Amendment challenge, a federal criminal statute that prohibits an individual subject to a state domestic violence protective order from shipping, transporting, or possessing firearms. *See* 18 U.S.C. § 922(g)(8); *see, e.g.*, *United States v. Boyd*, 999 F.3d 171, 185-89 (3d Cir. 2021); *United States v. McGinnis*, 956 F.3d 747, 752-59 (5th Cir. 2020); *United States v. Mahin*, 668 F.3d 119, 122-28 (4th Cir. 2012). As the Third Circuit Court of Appeals has stated:

Congress has chosen to address the searing issue of domestic violence by disarming persons when a court has found it necessary to issue a protective order that requires them not to harm their intimate partners or their children. And Congress has chosen to do so only after a person has had notice and a hearing before a court. That limitation on gun rights is clearly within the bounds of restrictions that the Second Amendment contemplates.

*Boyd*, 999 F.3d at 189.

Here, the trial court ordered Appellant not to abuse, harass, stalk, or threaten Complainant, his former intimate partner, after holding a hearing and allowing Appellant to challenge the allegations against him. Final PFA Order, 5/5/21. Specifically, the trial court found that Appellant had a past history of threatening Complainant, that Appellant committed abuse under the PFA Act by making actual physical contact with Complainant during the incident that precipitated the instant petition, and that Appellant also abused Complainant by placing her in reasonable fear of imminent serious bodily injury. N.T., 5/5/21, at 58-60. In light of the trial court's findings of past threats of harm and physical contact that placed Complainant under fear of serious bodily injury, as well as the complete absence of any legal support for Appellant's constitutional argument, we find no merit to Appellant's argument that the PFA Act violates the Second Amendment and Article I, Section 21.

In his next issue, Appellant argues that the May 5, 2021 hearing was conducted "in a manner inconsistent with due process." Appellant's Brief at 8-9. In PFA matters, due process requires that "the parties must, at a minimum, have the opportunity to present witnesses, testify on one's behalf, and cross[-]examine the opposing party and his/her witnesses." *Lanza v.*

*Simconis*, 914 A.2d 902, 906 (Pa. Super. 2006). This appellate issue consists of four subsidiary claims. First, Appellant argues that his rights were violated because he was not represented by counsel. Appellant also contends that the trial court failed to rectify sound issues in the courtroom when it was apparent that his difficulty in hearing the proceedings was hindering his participation in the hearing. Third, Appellant asserts that the trial court "could not make a fully informed judgment" because of "insufficient discovery" and certain witnesses not being present. Appellant's Brief at 9. Lastly, Appellant argues that the trial court did not make enough of an effort to resolve an impasse between the parties that would have allowed for an amicable agreement to forgo the hearing.

Appellant is not entitled to relief on any of these arguments. First, the PFA act provides only that the trial court "shall, at the time the defendant is given notice of the hearing [on the PFA provision], advise the defendant of the right to be represented by counsel." 23 Pa.C.S. § 6107(a). Thus, there exists no right to court-appointed counsel in a PFA proceeding. *See Varner v. Holley*, 854 A.2d 520, 523 (Pa. Super. 2004); *cf.* 23 Pa.C.S. § 6114(b)(3) (defendant in indirect criminal contempt prosecution based upon the violation of a PFA order has a right to appointed counsel). Here, the notice of the hearing issued to Appellant appropriately advised him of the fact that he was entitled to legal representation, but no lawyer would be appointed to represent him. Notice of Hearing, 4/22/21.

Second, while it was apparent that Appellant was having some difficulty in hearing testimony and statements by the trial court, he was able to provide testimony on his behalf and extensively cross-examine Complainant. Moreover, he did not seek a continuance or otherwise raise the issue of his auditory difficulties with the trial court. We cannot find that the trial court abused its discretion in not *sua sponte* making an accommodation for Appellant.

Third, while Appellant claims that he was not permitted sufficient discovery and that witnesses he subpoenaed did not show up for the hearing, he made no effort to raise the absence of his witnesses with the trial court prior to or at the hearing. Pennsylvania Rule of Civil Procedure 1930.5 provides that no discovery will be permitted in PFA proceedings unless authorized by the trial court, but Appellant did not seek leave of the court to conduct discovery in advance of the hearing. Pa.R.Civ.P. 1930.5(a). Moreover, the trial court did not bear any responsibility for ensuring that Appellant was prepared to present his case, and instead due process only required that the court allow Appellant the opportunity to present evidence on his behalf and cross-examine opposing witnesses, which it did in this case. *Lanza*, 914 A.2d at 906; *see also Smithson v. Columbia Gas of PA/NiSource*, 264 A.3d 755, 760 (Pa. Super. 2021) (*pro se* status confers no special benefit on party who must assume the risk of his lack of expertise and legal training). Therefore, there is no merit to Appellant's argument concerning his inability to seek discovery or call witnesses on his behalf.

Finally, we find no fault in the trial court's failure to break an "impasse" that prevented the voluntary resolution of the PFA petitions. Appellant's Brief at 9. The trial court provided the parties with an off-the-record opportunity to discuss the entry of a consent order, N.T., 5/5/21, at 10-20, and the trial court was under no obligation to pressure the parties into a resolution that ultimately proved elusive.

In his fourth issue, Appellant argues that Complainant's attorney at the hearing, Paul J. Malizia, Esquire, "conspire[d]" with the trial court to "torpedo negotiations" between the parties regarding the amount of time Appellant would be given to remove his personal property from Complainant's home and yard.[5] Appellant's Brief at 9. Appellant asserts that as a result of Attorney Malizia's insistence that Appellant would only be given 60 days to remove his property when Appellant had requested 90 days, Appellant and Complainant could not agree on a consent order and the final PFA hearing proceeded to a resolution more disadvantageous to Appellant's interests.

Here, the record reveals that there were two issues that prevented the entry of a consent order, whether Appellant would be provided 60 or 90 days to remove his personal property and whether Appellant would be required to

_____

[5] Attorney Malizia, who is the part-time District Attorney for Cameron County, filed an application to withdraw from representation of Complainant in this appeal, which this Court granted. As Attorney Malizia explained in his application to withdraw, he only represented Complainant at the hearing because he was present in the trial court on the day of the PFA hearing and he thought that his representation of Complainant, who he had represented in prior matters, would aid in the prompt resolution of the proceeding.

surrender his firearms for the duration of the order. N.T., 5/5/21, at 12-17. There is no indication that Attorney Malizia negotiated against Complainant's wishes, but rather the transcript reveals that, while Attorney Malizia initially indicated an openness to Appellant retaining his firearms, Complainant insisted that Appellant's firearms remain in the possession of the Sheriff during the pendency of the consent order term. *Id.* at 15-17. Furthermore, there is no evidence of a "conspir[acy]" between Attorney Malizia and the trial court with respect to the negotiations. Appellant's Brief at 9. Instead, the trial court stated explicitly that it would not involve itself in the negotiations and recessed the proceedings to allow the parties to confer outside the court's presence. N.T., 5/5/21, at 10-11. Therefore, we find no merit to Appellant's fourth issue.

Appellant next argues that there was insufficient evidence to support the issuance of the final PFA order by a preponderance of the evidence. Appellant contends that the trial court relied only on hearsay and accounts of abuse rejected in a prior PFA proceeding.

In PFA matters, a petitioner is required only to establish that abuse occurred by a preponderance of the evidence rather than under the beyond a reasonable doubt standard applicable to criminal matters. *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020); *K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa. Super. 2019). A preponderance of the evidence is defined as "the greater weight of the evidence," or, in other words, enough evidence "to tip a scale slightly." *E.K.*, 237 A.3d at 519 (citation omitted).

When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*Id.* (quoting *K.B.*, 208 A.3d at 128).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *Id.* (citation omitted). Abuse is defined in the PFA Act to include "[t]he occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury [] with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S. § 6102(a).

The PFA Act does not define bodily injury but instead adopts the definitions set forth in the Crimes Code of "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S. § 6102(b); 18 Pa.C.S. § 2301. Similarly, for purposes of a PFA proceeding, we apply the Crimes Code definition of "serious bodily injury" of "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or

- 11 -

impairment of the function of any bodily member or organ." 23 Pa.C.S. § 6102(b); 18 Pa.C.S. § 2301.

We further note that "[p]ast acts are significant in determining the reasonableness of a PFA petitioner's fear." *E.K.*, 237 A.3d at 519; *see also* *K.B.*, 208 A.3d at 128. Moreover, a complainant's testimony by itself can be sufficient for entry of a PFA order if it is believed by the court. *E.K.*, 237 A.3d at 523; *Custer*, 933 A.2d at 1058.

At the hearing, Complainant testified that on April 22, 2021, she informed Appellant that she needed to go to the pharmacy to pick up her medicine and she asked him to walk her to the car. N.T., 5/5/21, at 21-22. Appellant responded by saying "[s]hut up," "I don't want to hear it," and "quit telling me what to do." *Id.* at 21. Complainant testified that Appellant then grabbed her, twisted her shirt, and leaned on her with his 300-pound body. *Id.* at 22, 28. Appellant stated "[i]f you don't shut up, I'm going to strangle you" and then threw her onto the bed. *Id.* Finally, Appellant told Complainant that "[i]f you don't shut up and quit telling me what to do, I'm going to get a gun and I'll shoot you and throw you in a sink hole." *Id.* at 22. Complainant stated that, as a result of this interaction, her right leg was black and blue from her knee down to her toes and the bruising was still visible on the date of the hearing. *Id.* at 22, 30.

On cross-examination by Appellant, Complainant also testified regarding the events later on April 22, 2021 after the parties were taken to the Pennsylvania State Police barracks:

[Appellant:] And isn't it true that [after leaving the barracks] you said, What are you going to do next? Try and shoot me?

[Complainant:] Yes, I did. . .

\* \* \*

[Appellant:] . . . And isn't it true that I said, Why would I walk a hundred feet to the truck, get my guns out from behind the dash . . . and walk back in a hundred feet to waste a bullet on you?

[Complainant:] Yes.

*Id.* at 30, 32.

Complainant also discussed two prior incidents of potential abuse involving Appellant. Complainant testified that she filed a PFA against Appellant in 2015 after he threw hot tea in her face. *Id.* at 32-33. Complainant further described a 2016 incident in which she reported to the police that Appellant had threatened to "bash [her] head in with a baseball bat." *Id.* at 40.

In granting Complainant's PFA petition, the trial court found that she had met her burden of showing that abuse had occurred. Specifically, the court concluded that Appellant had intentionally, knowingly, or recklessly caused Complainant to suffer a bodily injury and that Appellant had placed Complainant in reasonable fear of imminent serious bodily injury. *Id.* at 59; *see also* 23 Pa.C.S. § 6102(a). In making its ruling, the trial court determined that Complainant testified credibly regarding the April 22, 2021 incident. N.T., 5/5/21, at 60. The court also found relevant other incidents of abuse between the parties, noting in particular Appellant's threat to hit Complainant in the

- 13 -

head with a baseball bat and his statement that he would not waste a bullet on Complainant. *Id.* at 58-59.

Viewing the evidence in the light most favorable to Complainant, we agree with the trial court that the evidence was sufficient to show that Appellant caused Complainant bodily injury. As the factfinder, the trial court was permitted to infer from Complainant's description of the events that Appellant acted intentionally, or at least recklessly, when he grabbed her, twisted her shirt, leaned his body against her, and threw her onto the bed. 23 Pa.C.S. § 6102(a). Complainant suffered a "bodily injury" as defined by the statute as she testified that she sustained bruising on her leg that was still visible at the date of the hearing, nearly two weeks after the incident in question. *See In re M.H.*, 758 A.2d 1249, 1252 (Pa. Super. 2000) (individual who aggressively grabs the arm of another and pushes her against wall causes "bodily injury" under the Crimes Code, even though the victim did not require medical attention or miss work and only sustained bruises that lasted a few days). Furthermore, the trial court was permitted to conclude that Appellant placed Complainant in reasonable fear of imminent serious bodily injury when he said that, if Complainant did not shut up, he would strangle her or shoot her with a gun. 23 Pa.C.S. § 6102(a).

While Appellant asserts that the only evidence against him was hearsay, he did not object at any point to Complainant's testimony on the basis of hearsay. Therefore, any hearsay argument is waived. *See Commonwealth v. Wroten*, 257 A.3d 734, 742 (Pa. Super. 2021) (failure to raise

contemporaneous objection to admission of evidence constitutes waiver of appellate argument).[6] In addition, we disagree with Appellant that the trial court's reference to prior threats of abuse by Appellant towards Complainant when rendering its decision "effectively revers[ed]" a 2016 ruling by a magisterial district judge dismissing a harassment charge against Appellant. Appellant's Brief at 10. This purported earlier dismissal of charges against him was not made part of the record in the PFA action, and, in any event, any prior ruling in a criminal action would not have preclusive effect in this PFA proceeding which has a lower burden of proof. *E.K.*, 237 A.3d at 519; *K.B.*, 208 A.3d at 128. Furthermore, the trial court was permitted to consider Appellant's past threats to Complainant in determining whether, on the date in question, she reasonably feared that he would cause her serious bodily injury. *E.K.*, 237 A.3d at 522-23 (trial court appropriately permitted petitioner to testify regarding long history of intimate partner abuse in order to determine reasonableness of petitioner's fear).

In Appellant's sixth issue, he argues that Complainant "visit[ed] fraud upon [the trial court] by falsely representing actions and allegations." Appellant's Brief at 10. Appellant argues, *inter alia*, that Complainant's statement that she was afraid of Appellant should not have been believed

---

[6] In any event, we note that, to the extent Complainant's testimony constituted hearsay, she recounted statements that Appellant had made to her, which falls into the hearsay exception for an opposing party's statement. *See* Pa.R.E. 803(25)(A) (statement made by opposing party and offered against him shall not be excluded by rule against hearsay).

because she has martial arts training and that Complainant misconstrued his behavior on April 22, 2021 as "[h]is nature is to be upbeat and jovial." *Id.* at 10-11. In his seventh issue, Appellant alleges that Complainant conspired with Attorney Malizia and another individual in filing the PFA petition in order to have Appellant evicted and have his bail revoked so that he would be thrown into jail.

Appellant's arguments fail as they relate to the issue of Complainant's credibility. The trial court heard Complainant's testimony and found her credible; we are bound by the court's credibility finding and may not revisit it on appeal. *Kaur*, 259 A.3d at 509; *Custer*, 933 A.2d at 1058. "It is well-settled that 'the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.'" *Kaur*, 259 A.3d at 509 (quoting *Commonwealth v. Walsh*, 36 A.3d 613 (Pa. Super. 2012)). Furthermore, we note that Appellant's attacks on Complainant's credibility relate in large part to his description of conversations and events—including allegations related to an action presently before the Commonwealth Court in which Complainant is a party—that are not a part of the certified record in this appeal. We may not consider this extraneous information for the purpose of our present disposition. *PHH Mortgage Corp. v. Powell*, 100 A.3d 611, 614 (Pa. Super. 2014); *In the Matter of J.C.*, 5 A.3d 284, 288 (Pa. Super. 2010).

In his final issue, Appellant argues that the trial court refused to order the preparation of transcripts from a prior PFA case heard by the trial court

on March 3 and 16, 2015. Appellant contends that the trial court's decision "impedes and obstructs the administration of justice." Appellant's Brief at 12.

Appellant first requested that the trial court waive the cost of preparation of the 2015 transcripts due to his *in forma pauperis* status in his June 4, 2022 motion for reconsideration of the final PFA order. The trial court denied Appellant's request pursuant to Pennsylvania Rule of Judicial Administration 4007(E), which provides that "[i]n cases of economic hardship where there is no appeal pending or there exists no obvious need for the transcript to advance the litigation, the requesting party must demonstrate reasonable need before the court shall waive or adjust the cost of obtaining the transcript." Pa.R.J.A. 4007(E); **see also** Pa.R.J.A. 4008(B)(3)("Transcript costs for ordinary transcripts in matters that are not subject to an appeal [or] where the transcript is not necessary to advance the litigation . . . may be waived at the court's discretion for parties who qualify for economic hardship . . . and upon good cause shown."). In denying Appellant's request, the court determined that the requested 2015 transcripts were not necessary to advance the appeal in this matter and further that there was no appeal pending in the 2015 PFA case. Order, 9/3/21.[7]

We find no error or abuse of discretion in the trial court's refusal to authorize the preparation of the 2015 transcripts. Regardless of whether the

_____

[7] The trial court waived the costs associated with the preparation of the May 5, 2021 hearing transcript.

2015 transcripts were relevant to the trial court's consideration of the instant PFA petition, Appellant did not request waiver of the costs of preparing the 2015 transcripts until after the May 5, 2021 hearing in the instant matter and the trial court's issuance of the final PFA order. Appellant could not show reasonable need for the preparation of transcripts to influence a ruling that the trial court had already made.

Accordingly, we conclude that Appellant is not entitled to relief on any of his appellate issues, and we affirm the final PFA order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/20/2022